## Case No. 15,878.
### UNITED STATES v. NICKERSON.
### SAME v. TAYLOR.
[17 Law Rep. 266; 1 Spr. 232.] 1

District Court, D. Massachusetts. May, 1854.

PERJURY—FISHING BOUNTY.

1. The seventh section of the act of congress of July 29, 1813, c. 35 [3 Stat. 52], the act providing for the payment of the fishing bounty, does not require any oath to the agreement referred to in that section.
[Cited in U. S. v. Howard, 37 Fed. 667; U. S. v. Bedgood, 49 Fed. 56.]

2. The act of July 29, 1813, c. 35 [3 Stat. 52], expressly prescribes the kind of proof of compliance with the requirements of that act, necessary to entitle the owner of a fishing vessel to claim the bounty, and it is not, therefore, competent for any officer of the United States to require new oaths, so as to make the false taking of them legally criminal.

Indictments were found by the grand jury of the district court for the March term against Lindsey Nickerson, Jr., one of the owners, and Hezekiah Taylor, the late master, of the schooner Silver Spring, charging each of them with perjury in having sworn falsely in matters to which an oath was required by the statute of July 29, 1813, in order to obtain the bounty or allowance on the said schooner Silver Spring, for the fishing season of 1853.

The indictment against Nickerson, though it had but one count, charged him with swearing falsely in two particulars: First. As to the national character of the fishermen on board the Silver Spring. The certificate of

the owner, signed and sworn to by Nickerson, declared that three-fourths of the crew were "citizens of the United States, or persons not the subjects of any foreign prince or potentate." The indictment alleged them to be foreigners, subjects of Victoria, queen of Great Britain, etc. Second. With swearing falsely, that the paper (a common fisherman's paper), produced to the collector at the custom-house on claiming the bounty, was the original agreement between the owners, master and men on board the said schooner, during the season of 1853, when it was not so, and when in fact the men were shipped on wages and not on their lay.

The indictment was brought under the seventh and ninth sections of the statute of July 29, 1813. The first of these provides, that "the owner or owners of every fishing vessel of twenty tons or upwards, his or their agent or lawful representative shall, previous to receiving the allowance made by this act, produce to the collector who is authorized to pay the same, the original agreement or agreements which may have been made with the fishermen employed on board such vessel as is herein before required, and also a certificate to be by him or them subscribed, therein mentioning the particular days on which she sailed and returned on the several voyages, or fares she may have made in the preceding season, to the truth of which he or they shall swear or affirm before the collector aforesaid." The ninth section provides, that "any person who shall make any false declaration in any oath or affirmation required by this act, being duly convicted thereof, in any court of the United States, having jurisdiction of such offence, shall be deemed guilty of wilful and corrupt perjury."

THE COURT (SPRAGUE, District Judge), on the reading of the indictment expressed an opinion that the first charge, if sustained, could not authorize a conviction for perjury under the statute of July 29, 1813, because that statute contained no requirement that three-fourths of the crew should be citizens of the United States.

C. B. Goodrich, and T. K. Lothrop, for defendant, contended, that the seventh section did not require an oath as to the agreement; but merely an oath as to the truth of the certificate of the days of the vessel's sailing and returning. And, therefore, that the first charge in the indictment could not warrant a conviction for perjury, even supposing the defendant to have sworn falsely as to the agreement as alleged; the oath to the agreement being not required, and idle. That the word "certificate" in the seventh section was the only required antecedent of the relative pronoun "which," and that the statute being penal must deceive a strict construction.

Mr. Hallett, U. S. Dist. Atty., argued, that the whole statute must be construed together,

and not a single section by itself; that the whole statute should receive that construction which would best support the intention of congress in its enactments; that the intention of congress to require an oath as to the agreement, as well as one to the certificate, was perfectly clear; and that the rules of grammar would be perfectly satisfied by referring which to both the words "agreement" and "certificate."

THE COURT (SPRAGUE, District Judge). The precise question, here, and it is a question of importance not only in this particular case, but as regulating the proceedings in future cases arising under this statute is, whether the seventh section of the statute requires the oath of the owner to the truth of the agreement and of the certificate described in that section, or to the truth of the certificate alone. That section requires two things: First, that the owner should produce the original agreement made with the fishermen; second, and also a certificate specifying certain particulars, to the truth of which he is required to make oath. The whole question thus turns on the force and effect of the word "which." Does it refer to "certificate" alone, or does it embrace both "certificate" and "agreement"?

The first observation which I have to make on this point is, that the force and effect of the word "which" is entirely satisfied grammatically and philologically by the word "certificate." It may include the other; but the word certificate is a sufficient antecedent for it to answer all the rules of grammatical construction. Is the meaning and intent of the section satisfied by this construction? It is suggested by the district attorney, that if you strike out the words specifying the contents of the certificate, which are, as it were, parenthetical, and may be omitted without injury to the sense, so that the clause will read, "shall produce the original agreement, and also a certificate to be subscribed by him to the truth of which he shall swear," etc., the construction will then be clear, and the intention of the legislature to require an oath, as well to the truth of the agreement as to that of the certificate, certain and manifest. Is this so? Is the language of the section appropriate for this construction, if you strike out the intermediate clause? I think not. Persons do not swear to the truth of an agreement, but to its genuineness, or that it is the original agreement. And here the printed oath to which the owner is required to swear is divided to suit this difference. And he swears that the certificate is true, and that the paper produced is the original agreement. Is this oath, that the paper produced is the original agreement made with the men, the same as an oath to the truth of the agreement? It may be so, but perhaps it is not. For part of the case here may be that there was another verbal agreement originally, and

that this written one was made subsequently. We all know the minute description of the oath required in an indictment for perjury. Can we say, therefore, that when the oath is that the agreement produced is the original one, that an indictment setting forth this oath, and charging the defendant with perjury in having taken it falsely, will satisfy a statute requiring an oath as to the truth of the agreement, and providing that this oath, if taken falsely, shall subject the person so taking it to the pains and penalties of perjury. I only adduce this to show that in requiring an oath to the agreement it has been found necessary to alter the phraseology of the statute.

But, further, there is nothing in the seventh section of the statute of July 29, 1813, which requires that the two acts therein made requisite for obtaining the fishing bounty should be done at the same instant. They may be done at different times. The certificate may be made at one time and the agreement produced at another, a week, a month, or six weeks later, it is immaterial. The word "also" has besides to a legal ear a peculiar force and significance. It indicates that you are going to a distinct and independent matter, and if this statute was drawn by any one familiar with legal language, there was probably a purpose in its insertion. At all events the language is at least so doubtful that no court of justice would allow a person to be convicted of so grave an offence upon language so vague, ambiguous, and indeterminate. Congress may have intended to require an oath as to the agreement, or they may have not. It is so uncertain that I cannot say.

It is argued on the part of the government that two things are necessary to qualify a vessel to obtain the fishing allowance: First, that the vessel should be at sea four months at sea; second, that a certain specified written agreement should have been made with the fishermen employed; that an oath of the owner is required to prove a compliance with the laws in the first particular, and that there is equal reason for requiring it as to the agreement. But the question is not what congress might have done, but what they have done. And I see a ground of distinction that may have induced congress to require an oath as to the certificate when they did not as to the agreement. It is provided by another section of the same statute that fraud in producing the agreement, or in any proceeding necessary to obtain the bounty, shall cause a forfeiture of the vessel. This is a heavy penalty, and congress may have been satisfied that this was a sufficient punishment for fraud relating to the agreement. The owner is to produce to the collector who is to pay the bounty a certificate of the days on which the vessel sailed and returned. This is the only document required by the statute. The circular of the secretary of

the treasury obliges the owner of a vessel claiming the bounty, to produce the log book kept on board the vessel during her fishing voyage. But the only thing the statute requires is the certificate. The time the vessel has been in port during the season is necessarily excluded in the computation of the time she has been engaged in fishing, and in the absence of a log book—and the statute, as already stated, makes no provision for the existence of such a book—there is great difficulty in proving this. and so the oath of the owner was required by the statute to the certificate of the days of the vessel's sailing and returning, as proof that she was the proper time at sea. Courts of justices are not inclined to increase or extend custom-house oaths. In the present case the legislature probably did not intend to require an oath as to the agreement.

Upon learning this opinion of the court, the district attorney proposed to prove that the oath as to the agreement was taken in ·pursuance of instructions of the secretary of the treasury to the collectors. relative to the payment of the fishing bounty. and contended upon the third section of the statute of March 1, 1823, c. 37 [3 Stat. 730], and the case of U. S. v. Bailey, 9 Pet. [34 U. S.] 238. that the secretary of the treasury had a right to require an oath as to the agreement. and that such an oath so required would be a legal one, the false taking of which would sustain an indictment for perjury.

THE COURT (SPRAGUE, District Judge), without expressing an opinion on this point, held the evidence inadmissible, in support of the present indictment, which rested upon different grounds. and charged the defendant with perjury, committed by falsely swearing in an oath required by the statute of July 29, 1813, and thereupon ordered the jury to return a verdict of not guilty.

In the case of Taylor, the master of the vessel who was charged with a similar offence under the same statute, the jury, under the direction of the court. returned a verdict of not guilty. A motion was thereupon made for his discharge.

Mr. Hallett, U. S. Dist. Atty., objected on the ground that further proceedings would be instituted against him under the statute of March 1, 1823, c. 37, § 3 [3 Stat. 770], which provides that "any person who shall swear falsely touching the expenditure of public money, or in support of any claims against the United States, shall, on conviction therefor, suffer as for wilful and corrupt perjury"; and he cited the case of U. S. v. Bailey [supra], to show that such an indictment might be maintained.

THE COURT (SPRAGUE, District Judge). It is proper for the court on a motion for the discharge of a defendant to see whether he may be liable on any new charge, and whether he should therefor be detained in custody to answer further proceedings. The defendant in this case is charged with swearing falsely that the agreement produced by him to the collector is the original agreement made with the fishermen on board the schooner Silver Spring, during the last season. The indictment was brought under the statute of July 29, 1813, and the court have already decided that no oath to the agreement is required by that act, and the jury under the direction of the court have returned a verdict of not guilty. A motion has been made for the discharge of the defendant, to which the district attorney objects on the ground that he wishes to retain him in custody, that he may institute new proceedings against him for the same offence. He states that the oath as to the agreement was taken in compliance with the instructions of the secretary of the treasury, and in conformity with the usage for the last forty years in all cases where claims have been made for the fishing bounty, and he cites the . decision of the supreme court of the United States in U. S. v. Bailey, 9 Pet. [34 U. S.] 238, to show that the secretary of the treasury has power to require oaths to be taken in support of claims, and that they are legal oaths.

The case in 9 Pet. [34 U. S., supra], though the decision of the supreme court, and therefore binding on this court, is undoubtedly the very extreme of the law, and is not to be extended. Let us compare it with the present case, and see if there is any distinction between them. In that case an act of congress authorized the treasury department to adjudicate upon and settle certain claims on the state of Virginia, for pay for military service, which had been assumed by the United States. There was no provision as to the kind of proof the secretary might require, and the adjudication of the department was, I think, final. The supreme court say that congress must be supposed to have acted with reference to the well-known usage of the department to require the oath of the claimant in support of claims payable there. And therefore that the secretary had authority to insist upon the oath in that case. and that the oath so taken was a legal one. But by the statute of July 29, 1813, congress has seen fit to prescribe expressly the kind of proof of compliance with the requirements of that act, for obtaining the fishing bounty, which shall be necessary to entitle the owner of a fishing vessel to claim the bounty. It has directed that the owners of vessels of more than twenty tons, shall produce the agreements made with their fishermen, and also a certificate of the days of the vessel's sailing and returning, and of the time that she was at sea. And it has further required the oath of the owner to the truth of the certificate. There are other requisitions for

boats and vessels between five and twenty tons, and when these proofs have been made, the collector is to pay the bounty. Now when congress, the supreme legislative authority, has thus directed precisely what shall be done to entitle a party to receive the bounty—what papers shall be produced, and to which of them an oath shall be required, it is not competent for any officer to require new oaths, so as to make the false taking of such oaths legally criminal. The difference between this case and that in 9 Pet. [34 U. S.] is that in that case no mode of proof was provided by law; in this, congress has seen fit to prescribe the amount and manner of proof.

I might further say that in this case the secretary of the treasury has no authority by the statute. And that the power of deciding on the claims is left entirely to the collector. As to the power of the secretary or of the collector to regulate the proof necessary in relation to matters required by other statutes, in which no mode of proof is provided, I have no occasion to express any opinion. The only oath which it is alleged that the defendant Taylor took falsely is the oath as to the agreement. And as the production of the agreement is one of the requirements of the statute of July 29, 1813, while no oath regarding it is required by that act, the oath alleged to have been taken could not have been a legal one, and could not therefore be the ground of an indictment for perjury. For these reasons the defendant must be discharged.

[NOTE. In the circuit court the defendant Nickerson joined in the demurrer to his former acquittal, and the judges were divided in the opinion as to whether or not that plea was good in bar to the indictment. The question was certified to the supreme court, where it was held that the special plea pleaded by defendant was a good plea in bar to the indictment. 17 How. (58 U. S.) 204.]